IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HELEN C. SCHOENGARTH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 04-1553-JJF |
| | : |
| JO ANNE B. BARNHART, | : |
| Commissioner of Social | : |
| Security Administration, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

Michael J. Goodrick, Esquire of MICHAEL J. GOODRICK, P.A., Wilmington, Delaware.
Attorney for Plaintiff.

Colm F. Connolly, Esquire, United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware.
Of Counsel: David F. Chermol, Esquire, Special Assistant United States Attorney for the District of Delaware, and Donna L. Calvert, Esquire of the OFFICE OF THE GENERAL COUNSEL OF THE SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.
Attorneys for Defendant.

**MEMORANDUM OPINION**

February 23, 2006
Wilmington, Delaware

*Joseph J. Farnan Jr.*
Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Helen C. Schoengarth, seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433. Plaintiff has filed a Motion For Summary Judgment (D.I. 11) requesting the Court to enter judgment in her favor. In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 14) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated August 23, 2004, will be affirmed.

## BACKGROUND

### I. Procedural Background

Plaintiff filed an application for DIB on October 10, 2002, alleging disability since October 8, 2002[1], primarily due to back pain. (Tr. 25-26, 100-102, 116.) Plaintiff's application was

---

[1] Plaintiff's application originally alleged disability since May 30, 2000, the date of her involvement in a car accident. However, she later amended her application to allege disability from October 8, 2002, the date she underwent surgery.

1

denied initially and upon reconsideration. (Tr. 65-68, 70-74.) Plaintiff filed a request for an administrative hearing, and the A.L.J. held a hearing on June 30, 2004. (Tr. 23-62.)

On August 23, 2004, the A.L.J. issued a decision denying Plaintiff's claim for DIB. (Tr. 12-17.) Plaintiff requested a review of the decision by the Appeals Council, but the Appeals Council denied her request for review. (Tr. 497-499, 5-7.) Accordingly, the A.L.J.'s August 23, 2004 decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying her claim for DIB. In response to the Complaint, Defendant filed an Answer (D.I. 8) and the Transcript (D.I. 9) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment and Opening Brief (D.I. 11, 12) in support of the Motion. In response, Defendant filed a Cross-Motion For Summary Judgment and a combined Opening and Answering Brief (D.I. 13, 14) requesting the Court to affirm the A.L.J.'s decision. Plaintiff has filed a Reply Brief (D.I. 15), and therefore, this matter is fully briefed and ripe for the Court's review.

**II. Factual Background**

    A.    <u>Plaintiff's Medical History, Condition and Treatment</u>

At the time the A.L.J. issued her decision in this case, Plaintiff was fifty-two years old. (Tr. 27, 100, 122.) Plaintiff has a high school eduction and past relevant work as Vice President of Operations for a manufacturing company. Plaintiff's past relevant work is classified as sedentary level work. (Tr. 56-57.) Although Plaintiff's lower back was injured in a motor vehicle accident on May 30, 2000 (Tr. 13), she continued working at her job, until her company went out of business on March 30, 2001. (Tr. 28.)

On the day of her motor vehicle accident, Plaintiff was treated in the Emergency Room at Christiana Hospital. Following the accident, Plaintiff complained of low back pain, hip pain and the inability to sleep due to pain. Plaintiff's family doctor, Dr. Messinger, referred her to physical therapy three times per week. Plaintiff's therapy included ultrasound message, mobilizations of the cervical spine, cervical traction, pelvic traction and therapeutic exercises. During the course of her therapy, Plaintiff reported difficulty with functional activities like light housekeeping and sitting or bending for any length of time. (Tr. 191.)

Plaintiff was also referred to Dr. Bohatiuk, a physiatrist, for injections of her lumbar spine. Plaintiff reported that the

3

intensity of her pain increased, rather than decreased after these treatments.

Upon the retirement of Dr. Messinger, Plaintiff treated with Dr. Kahn. Plaintiff underwent an MRI on December 27, 2001, which showed central disc herniations at L5-S1 and L4-L5 with degenerative changes at these levels and a collapse of the disc spaces. (Tr. 299.) Plaintiff took several medications during this time, including Paxil, Hydrochlor, Celebrex, Klonopin, Duragesic, Trimethobenz, Fioricet, Ultram, Flexeril, Prilosec and Mevacor. (Tr. 301.)

Plaintiff reported to Dr. Kahn that her symptoms were worsening, and Dr. Kahn referred her to Dr. Rudin at First State Orthopaedics. Plaintiff underwent corrective spinal surgery on October 8, 2002. Her surgery included a lumbar spinal fusion with posterior instrumentation. Plaintiff indicated that the surgery performed by Dr. Rudin resolved her back pain, and Plaintiff's post-operative clinical findings were normal and her x-rays showed good post-surgical alignment. (Tr. 412-414.)

Although Plaintiff reported that her prior back pain resolved, she also reported "new" low back pain following surgery. (Tr. 413.) Plaintiff underwent additional therapy, which lessened her symptoms, but did not successfully resolve them.

4

In January 2003, Plaintiff was referred to Dr. Falco at Mid-Atlantic Spine. Plaintiff continued to report the "new" back pain, as well as numbness in her left thigh and left leg. Plaintiff underwent a psychological evaluation and a pain evaluation at Mid-Atlantic Pain Institute, which indicated anxiety and depression and significant impairment due to pain. (Tr. 272.)

On two occassion, Plaintiff wrote letters to the Social Security Administration indicating that she could not work according to the instructions she received from Dr. Rudin. (Tr. 76, 156.) However, Dr. Rudin's records do not indicate that he ever restricted Plaintiff from working. In a letter to Meyers Law Office dated August 26, 2003, Dr. Rudin made no references to any restrictions on Plaintiff's ability to work. (Tr. 472-473.) Dr. Rudin explained the surgery he performed on Plaintiff and stated that "[b]y six weeks out, her old pain was essential gone and that remains so." (Tr. 472.) Dr. Rudin wrote that Plaintiff "has done rather well with the exception of some episodes of falling." (Id.) Dr. Rudin wrote that the results of Plaintiff's nerve conduction study were normal and that she did have "some pain secondary to her hardware given her small stature and the prominence of the spinal instrumentation." However, Dr. Rudin indicated that he intended to remove her spinal instrumentation one-year post-operatively. (Id.) In closing, Dr. Rudin

5

summarized as follows:

> As a result of her problem, she has certainly sustained a significant permanent impairment to her lumbar spine. As a result of the automobile injury of 5/30/00, she sustained a significant injury to her lumbar spine necessitating significant spiral reconstructive surgery. She sustained a permanent impairment as a result. The care to treat that, including the medical bills, Christiana Hospital, anesthesia services, Pro Physical Therapy were medically necessary and related to the above injury.

(Tr. 473.)

The Myers Law Offices also arranged for Plaintiff to have an evaluation by a vocational expert on August 25, 2003. Plaintiff reported that she continued to experience headaches, low back pain and left leg numbness. Plaintiff reported difficulty falling asleep despite the daytime sedation caused by her medication and problems with attention, concentration and short term memory as a result of her pain and medication side effects. The vocational expert concluded that Plaintiff was "vocationally disabled at this time", but in the preceding paragraph the vocational expert used certain criteria, including a disability status of "Not Severely Disabled, i.e. able to do some types of work" to conclude that Plaintiff "can anticipate a 347% reduction of future work life in comparison to her pre-injury potential." (Tr. 482.)

In June 2004, Plaintiff's current attorney requested Plaintiff's family doctor, Khaja Yezdani, M.D., to complete a functional capacity assessment. (Tr. 492-496.) Dr. Yezdani

6

indicated that Plaintiff's maximum ability to lift and carry on an occasional and frequent basis (no more than 1/3 of an 8 hour day) was less than 10 pounds. Dr. Yezdani also found that Plaintiff could stand, walk and sit during an 8 hour day less than 2 hours. He indicated that Plaintiff could only sit or stand 5 minutes before changing positions to relieve discomfort, and that Plaintiff should never twist, stoop or climb ladders and that she could occasionally crouch or climb stairs with the use of a cane.

Two state agency physicians assessed Plaintiff's functional capacity, one in January 2003 and one in May 2003. Both opined that Plaintiff was capable of performing at least sedentary level work. (Tr. 258-265; 417-424.)

B.  The A.L.J.'s Decision

On June 30, 2004, the A.L.J. conducted a hearing on Plaintiff's application for DIB. (Tr. 23-62.) At the hearing, Plaintiff was represented by counsel. In addition to Plaintiff, a vocational expert testified. The vocational expert explained that Plaintiff's past work could be performed at either the light or sedentary level, because it was a supervisory type of job which provided a great deal of flexibility in the way it was carried out.

In her decision dated August 23, 2004, the A.L.J. found that Plaintiff's musculoskeletal difficulty was a "severe" impairment,

7

but that the condition did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. 26.) Evaluating Plaintiff's credibility, the A.L.J. found that her allegations regarding her limitations were not fully credible, and that Plaintiff retained the residual functional capacity for sedentary work with a sit/stand option. The A.L.J. further found that this residual functional capacity did not preclude Plaintiff from performing her past relevant work as Vice President of marketing/sales, and therefore, Plaintiff was not disabled during the relevant time frame.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security are conclusive, if they are supported by substantial evidence. Accordingly, judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. Id. In other words, even if the reviewing court would have decided the case differently, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. at 1190-91.

The term "substantial evidence" is defined as less than a preponderance of the evidence, but more than a mere scintilla of

evidence. As the United States Supreme Court has noted substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed that "[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

### I. Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of

not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§ 404.1505. In order to qualify for disability insurance benefits, the claimant must establish that he or she was disabled prior to the date he or she was last insured. 20 C.F.R. § 404.131, <u>Matullo v. Bowen</u>, 926 F.2d 240, 244 (3d Cir. 1990). The claimant bears the initial burden of proving disability. 20 C.F.R. §§ 404.1512(a); <u>Podeworthy v. Harris</u>, 745 F.2d 210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations require the A.L.J. to perform a sequential five-step analysis. 20 C.F.R. §§ 404.1520. In step one, the A.L.J. must determine whether the claimant is currently engaged in substantial gainful activity. In step two, the A.L.J. must determine whether the claimant is suffering from a severe impairment. If the claimant fails to show that his or her impairment is severe, he or she is ineligible for benefits. <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds to step three. In step three, the A.L.J. must compare the medical evidence of the claimant's impairment with a list of impairments presumed severe enough to preclude any substantial

gainful work. Id. at 428. If the claimant's impairment meets or equals a listed impairment, the claimant is considered disabled. If the claimant's impairment does not meet or equal a listed impairment, the A.L.J.'s analysis proceeds to steps four and five. Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work. Id. The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work. Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy. At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied. Id. Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity. Id. In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments. At this step, the A.L.J. often seeks the assistance of a vocational expert. Id. at 428.

## II. Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By her Motion, Plaintiff contends that the A.L.J.'s determination that she could perform her past relevant work was not supported by substantial evidence. Specifically, Plaintiff contends that the A.L.J. erred in (1) placing too much weight upon the report of Dr. Rudin, the physician who performed Plaintiff's surgery, (2) evaluating Plaintiff's credibility, and (3) mischaracterizing the testimony of the vocational expert. The Court will consider each of Plaintiff's arguments in turn.[2]

### A. Whether The A.L.J. Erred In Her Assessment Of The Medical Evidence

Plaintiff contends that the A.L.J. improperly credited the testimony of Plaintiff's surgeon, Dr. Rudin, over Plaintiff's family physician, Dr. Yezdani. Plaintiff contends that her treatment relationship with Dr. Rudin was for the limited purpose of surgery and that she did not treat with Dr. Rudin before her surgery or after her post-operative release from his care. Plaintiff contends that "new" pain followed her surgery, and the A.L.J. should have considered the more recent medical opinions of Dr. Yezdani.

---

[2] Plaintiff refers to the fact that she is receiving benefits from a subsequent application, effective as of July 1, 2004. Plaintiff refers to this date as the date after the denial in this case; however, the denial in this case was dated August 23, 2004. In any event, the Court has no information regarding the subsequent application, and the Court concludes that it is not relevant to the issues raised in this appeal.

12

An A.L.J. may reject the opinion of a treating physician if the opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record. Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). If the A.L.J. rejects the opinion of a treating physician, he or she must adequately explain the reasons for doing so on the record. Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).

In this case, the A.L.J. considered the opinion of Dr. Yezdani but declined to give it controlling weight. In so doing, the A.L.J. observed that the opinions of Dr. Yezdani were inconsistent with the evidence of record and based totally on Plaintiff's self-reports. Plaintiff has not directed the Court to any treatment notes of Dr. Yezdani or any clinical or laboratory diagnostic tests supporting his opinions. Moreover, the Court observes that Dr. Yezdani's opinions regarding Plaintiff's restrictions were not supported by statements Plaintiff made in other contexts, including statements she made in pain questionnaires she completed during her treatment with other doctors. (Tr. 387-388, 391-392, 405-406.) As the A.L.J. also noted, Dr. Yezdani is a family physician and not a specialist.

Plaintiff contends that the A.L.J. was required to accept Dr. Yezdani's opinions, because they were the most recent

13

opinions of Plaintiff's condition. However, the A.L.J. is not required to accept opinions which lack record support merely because of their temporal status. Rieder v. Apfel, 115 F. Supp. 2d 496, 502 (M.D. Pa. 2000) (concluding that A.L.J. erred in failing to accept opinion of treating physician, but also recognizing that treating physician's opinion may properly be rejected if it is contradicted by other medical evidence). Further, the Court concludes that the A.L.J.'s findings were not only supported by Dr. Rudin's opinions[3], but also by the opinions of two state agency physicians who evaluated the totality of Plaintiff's condition. See Jones v. Sullivan, 954 F.2d 125, 128-129 (3d Cir.1991) (recognizing that a non-examining physician can provide substantial evidence to support the A.L.J.'s decision); Rivera v. Barnhart, 239 F. Supp. 2d 413, 420 (D. Del. 2002) (recognizing that A.L.J. could rely on state agency physician opinions where they were consistent with other evidence in the record). Given that the evaluations of the state agency

---

[3] Plaintiff suggests that the A.L.J. erred in giving weight to Dr. Rudin's opinions over Dr. Yezdani's opinions; however, it appears to the Court that the A.L.J. weighed Dr. Rudin's opinion in the context of the other record evidence and did not base her decision on Dr. Rudin's opinion alone. (Tr. 24-26.) Further, unlike Dr. Yezdani's opinions, Dr. Rudin's opinions are supported by record evidence including post-operative x-rays of Plaintiff and treatment notes of his physical examinations. (Tr. 412-413.) Moreover, Dr. Rudin is a specialist who performed surgery on Plaintiff and treated her for at least a year post-operatively. (Tr. 52.) In these circumstances, the Court cannot conclude that the A.L.J. erred in crediting Dr. Rudin's opinions.

physicians, the post-operative opinions of Plaintiff's surgeon, and Plaintiff's own statements regarding her limitations contradicted the opinions of Dr. Yezdani, the Court cannot conclude that the A.L.J. erred in failing to give Dr. Yezdani's opinions controlling weight.

    B.    <u>Whether The A.L.J. Erred In Evaluating Plaintiff's Credibility</u>

Plaintiff next contends that the A.L.J. erred in finding Plaintiff's testimony about her limitations less than credible. Plaintiff contends that the changes to her disability onset date do not reflect a lack of credibility but a lack of legal knowledge.

Generally, the A.L.J.'s assessment of a plaintiff's credibility is afforded great deference, because the A.L.J. is in the best position to evaluate the demeanor and attitude of the plaintiff. <u>See</u> <u>e.g.</u> <u>Griffiths v. Callahan</u>, 138 F.3d 1150, 1152 (8th Cir. 1998); <u>Wilson v. Apfel</u>, 1999 WL 992723, *3 (E.D. Pa. Oct. 29, 1999). However, the A.L.J. must explain the reasons for his or her credibility determinations. <u>Schonewolf v. Callahan</u>, 972 F. Supp. 277, 286 (D.N.J. 1997) (citations omitted).

After reviewing the record as it relates to the A.L.J.'s determination of Plaintiff's credibility, the Court concludes that the A.L.J.'s credibility determination was adequately explained and is supported by substantial evidence. The A.L.J. noted that Plaintiff's hearing testimony was inconsistent with

15

the pain questionnaires she completed for purposes of her medical treatment. (Tr. 387-388, 391-392, 405-406, 492-496.) In addition, the record reveals that Plaintiff twice wrote that she was instructed by her surgeon Dr. Rudin not to work; however, the medical evidence does not corroborate Plaintiff's assertion. Plaintiff points to a statement by Dr. Rudin in a letter that she "has certainly sustained a significant permanent injury to her lumbar spine." However, Dr. Rudin's statement was made in the context of summarizing the injury for which she underwent surgery and not in the context of opining on her ability to work. Because Plaintiff's testimony was inconsistent with the medical evidence in the record and with other statements she made with regard to her pain for purposes of obtaining treatment, the Court concludes that the A.L.J. did not err in finding that Plaintiff's testimony regarding her limitations lacked credibility.

    C.   <u>Whether The A.L.J. Mischaracterized The Testimony Of The Vocational Expert</u>

Plaintiff also contends that the A.L.J. mischaracterized the testimony of the vocational expert to conclude that Plaintiff's past relevant work fell into the sedentary classification.[4]

---

    [4]   Although Plaintiff describes the testimony of the vocational expert as "disjointed" in the background sections of her Opening Brief and summarizes it as concluding that Plaintiff's past relevant work was light work, it does not appear to the Court that Plaintiff raised legal arguments with respect to the testimony of the vocational expert in the discussion portion of her Opening Brief. Indeed, the fact that Defendant did not respond to this argument supports the Court's conclusion

16

Plaintiff contends that the transcript was plagued with "inaudibles," and that at best, the vocational expert's testimony suggests that Plaintiff's past relevant work was performed at the light level, not the sedentary level.

Reviewing the testimony of the vocational expert, the Court cannot conclude that the A.L.J. erred in finding that Plaintiff's past relevant work did not require work-related activities precluded by her residual functional capacity for work at the sedentary level with a sit/stand option. Although there are several inaudible notations in the transcript, the Court does not find that they significantly impair the "gist" of the vocational expert's testimony. The vocational expert clearly testified that the Dictionary of Occupation Titles classified Plaintiff's past relevant work as sedentary (Tr. 56, 57); however she also acknowledged that the work could be performed as light. (Tr. 57.) In this regard, the vocational expert elaborated during her examination by Plaintiff's attorney that Plaintiff's former work allowed a great deal of flexibility as to how the tasks required by the job were performed. (Tr. 58, 59.) For example, the vocational expert testified that "in a management position, you can schedule your work as you choose," and that "if you're

---

that it was unclear by the Opening Brief that Plaintiff intended to raise it. Nevertheless, the Court will consider the argument because Plaintiff clearly identified it in the Reply Brief and the basis for it was touched upon in the Opening Brief.

17

interviewing somebody, nothing is requiring you, for instance, to sit or stand . . ." (Tr. 58.) To this effect, the vocational expert testified that the flexibility of the position could be used to accommodate the employee's needs. (Tr. 59.) In light of this testimony and the classification of Plaintiff's job in the <u>Dictionary of Occupational Titles</u>, the Court concludes that the A.L.J. did not mischaracterize the vocational expert's testimony and did not err in finding that Plaintiff's residual functional capacity of sedentary work with a sit/stand option did not preclude her from performing her past relevant work.

## CONCLUSION

For the reasons discussed, Defendant's Cross-Motion For Summary Judgment will be granted, and Plaintiff's Motion For Summary Judgment will be denied. The decision of the Commissioner dated August 23, 2004 will be affirmed.

An appropriate Order will be entered.